John W. Leardi
Nicole P. Allocca
BUTTACI LEARDI & WERNER LLC
212 Carnegie Center, Suite 202
Princeton, New Jersey 08540
609.799.5150
609.799.5180 FAX
*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| RENAY M. FRIEDMAN, D.C., | Civil Action No.: 3:21-cv-15416 |
| *Plaintiff,* |  |
| - v. - | **COMPLAINT** |
| RENAY M. FRIEDMAN D.C., LLC, RENAY M. FRIEDMAN D.C., LLC CASH BALANCE PLAN, MONMOUTH PAIN AND REHABILIATION, P.C., AND THOMAS DANDREA, D.C., |  |
| *Defendants*. |  |

Plaintiff Renay M. Friedman, D.C., ("Dr. Friedman") by way of this Complaint against Renay M. Friedman, D.C., LLC ("Friedman Chiropractic"), Renay M. Friedman, D.C., LLC Cash Balance Plan ("the Plan"), Monmouth Pain and Rehabilitation Center, P.C. ("Monmouth Pain"), and Thomas Dandrea, D.C., ("Dandrea") hereby alleges upon personal knowledge as to herself and her own acts,

and upon information and belief as to all other matters, based upon, *inter alia*, the investigation made by and through her attorneys, as follows:

## PARTIES

1. Dr. Friedman is an individual residing at 300 Valley View Circle Freehold, NJ 07728.

2. The Renay M. Friedman D.C. LLC d/b/a Friedman Chiropractic and Range of Motion Spine and Sports Care ("Friedman Chiropractic") is a chiropractic practice and a private employer located at Casino 9 Plaza, 1001 Route 9 North, Suite 101, Howell, NJ 07731. Friedman Chiropractic is an employer as defined by 29 U.S.C. § 1002(5).

3. Renay M. Friedman D.C., LLC Cash Balance Plan (the "Plan") is an employee benefit plan maintained for employees of Friedman Chiropractic, as defined by 29 U.S.C. § 1002(3).

4. Monmouth Pain and Rehabilitation, P.C. ("Monmouth Pain") is the "plan sponsor" as set forth in the October 15, 2020 filing of the Plan's Department of Treasury Form 5500.

5. A plan sponsor means (i) the employer in the case of an employee benefit plan established or maintained by a single employer, (ii) the employee organization in the case of a plan established or maintained by an employee organization, (iii) in the case of a plan established or maintained by two or more

employers or jointly by one or more employers and one or more employee organizations, the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan, or (iv) in the case of a pooled employer plan, the pooled plan provider, as defined by 29 U.S.C. § 1002(16)(B).

6. Since approximately 2017, Friedman Chiropractic has maintained an employee cash balance plan as defined in 29 U.S.C. § 1002(1), through which Dr. Friedman is entitled to a defined benefit.

7. Therefore, Dr. Friedman is a "participant" and a "beneficiary" under the Plan as defined by 29 U.S.C. § 1002(7) and (8).

8. Thomas Dandrea, D.C. ("Dandrea") is a named fiduciary of the Plan as defined by 29 U.S.C. § 1102(a)(2).

## JURISDICTION AND VENUE

9. Defendants' actions in administering the Plan are governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 to 1461 ("ERISA"). This Court, therefore, has original jurisdiction over the claim for benefits brought under 29 U.S.C. § 1132(a)(1)(B) herein pursuant to 29 U.S.C. § 1132(e), and a breach of fiduciary claim under 502(a)(3) pursuant to 29 U.S.C. § 1132(a)(3).

10. Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the District of New Jersey is the District where one or more of the Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## STANDING

11. As a participant of the Plan as that term is defined in 29 U.S.C § 1002(7), Dr. Friedman has standing to bring this action under 29 U.S.C. § 1132(a)(1)(B) and a breach of fiduciary claim under 29 U.S.C. § 1132(a)(3).

## FACTUAL ALLEGATIONS

12. On or about January 1, 2017, Friedman Chiropractic established the Plan.

13. According to the Cash Balance Plan Summary Plan Description ("SPD"), an employee is eligible to participate in plan upon competition of one year of service and attainment of age 21. Dr. Friedman met both of these eligibility requirements upon institution of the Plan.

14. Dr. Friedman participated in the Plan, subject to any limitations or exclusions, since its inception.

15. Friedman Chiropractic made contributions of $125,000.00 on behalf of Dr. Friedman for each of the two plan years prior to 2019.

16. In December 2018, Dr. Friedman sold the entirety of her membership interest in Friedman Chiropractic to Dandrea.

17. As such, Dandrea became the Plan fiduciary as the sole member of the Friedman Chiropractic LLC.

18. On or about September 20, 2019, Dr. Friedman was forced to resign from her employment at the Practice. This triggered a termination under the Plan.

19. According to the SPD, if a participant's employment terminates prior to retirement, the participant is eligible to receive only their vested percentage of their accrued benefit. The participant may elect to have the present value of their vested benefit distributed as soon as administratively feasible following termination of employment.

20. The vesting schedule states that if a participant has earned three years of service, they will be 100% vested in their accrued benefit.

21. Dr. Friedman worked at least 1,000 hours per year, thus achieving three years of service.

22. The Plan was frozen on February 1, 2020. This ceased all benefit accruals under the plan as of the freeze date. However, there was no formal resolution amending the plan to reflect the termination.

23. On May 4, 2020, Dr. Friedman's personal wealth advisor asked Dave Masterman, a plan account manager at BCG, for an update on the disbursement of Dr. Friedman's portion of the cash balance plan.

24. Mr. Masterman responded that it was "still being worked on." And that it would take a few more months.

25. Mr. Masterman further explained that the Plan "needs to be valued through the termination date" and the "accruals were frozen on 2/1/2020 with the intent to terminate the plan."

26. On July 9, 2020, Dr. Friedman's advisor followed up for an update. Dr. Friedman did not receive a response. On July 24, 2020, Dr. Friedman again followed up.

27. On August 24, 2020, Dr. Friedman again wrote to Mr. Masterman for an update. Mr. Masterman responded that the valuation was complete, but there was a "legal issue" going on with the sale of the practice and the cash balance plan.

28. On September 28, 2020, Dr. Friedman's advisor wrote to inform Mr. Masterman that as of September 22, 2020, the cash balance plan was no longer part of any legal proceedings. He then wrote to ask when Dr. Friedman's funds would be released.

29. In October 2020, Dr. Friedman's advisor and Masterman again exchanged emails discussing whether there was any documentation about legal proceedings involving the cash balance plan.

30. On January 26, 2021, Dr. Friedman requested an update on the ability to release her funds still held in the plan.

31. On June 21, 2021, Dr. Friedman's advisor inquired as to the status of the distribution of Plan funds to Dr. Friedman.

32. The next day, Danielle Pendrak, the replacement for Dave Masterman's role for the Plan administration, responded that she reached out for an update, but believes the plan is "still in litigation."

33. On June 24, 2021, Ms. Pendrak provided further clarifying information as to the status of the Plan. Specifically, she wrote,

> Per our legal team, they spoke with Dr. Dandrea and explained to him the termination paperwork was not finalized. They were instructed not to move forward in the Cash Balance Plan until told to do so by him. Our team also advised Dr. Dandrea that the plan was underfunded about $141,000 as of 12/31/19. Until all the issues mentioned are resolved, no assets can be distributed to the participant. Dr. Dandrea is aware of this as well.

34. As of November 30, 2020, the market value of the balance in the Plan account was $295,298.95. Dr. Friedman is entitled to a significant portion of the balance. However, the exact amount will need to be determined by an actuary.

35. Defendants are responsible under the Plan to calculate and pay Dr. Friedman's accrued benefit.

36. For over a year, Dr. Friedman continued to gain understanding as to how and why her defined benefit was not yet disbursed. These efforts were fruitless.

37. Any administrative remedies that may be required to be pursued under ERISA have been exhausted, should be deemed exhausted under applicable regulations, or would be futile under the circumstances, and are therefore excused.

38. Because Defendants failed to disburse Dr. Friedman's portion of the cash balance within the time frames set forth in 29 C.F.R. § 2560.503-1, Dr. Friedman is permitted to immediately pursue remedies available under 29 U.S.C. § 1132.

39. Further, Dandrea is the plan fiduciary. Indeed, it is clear he exercises discretionary authority and control of the Plan, as well as exercises control regarding the disposition of its assets.

40. Dandrea breached his duty to fund the Plan in a reasonable amount of time so that Dr. Friedman could access her benefit. 29 U.S.C. § 1104(a).

41. Specifically, Dandrea was informed of his responsibility to fund the plan in order to terminate it and disburse its assets. However, Dandrea refused to fund the Plan and continues to leave it underfunded.

42. As such, Dandrea is liable under 29 U.S.C. § 1132(a)(3).

## FIRST COUNT
## (Claim for Plan Benefits Under 29 U.S.C. § 1132(a)(1)(B))

43. Dr. Friedman repeats and re-alleges each and every allegation contained in Paragraphs 1 to 40 of the Complaint as if set forth at length herein.

44. By failing to pay benefits to Dr. Friedman under the Plan, Defendants violated obligations to the Plan.

45. Dr. Friedman was a participant and beneficiary of the Plan, and Dr. Friedman has standing to bring this cause of action under 29 U.S.C. § 1132(a)(1)(B) to enforce rights created by the Plan and to seek the disbursement of her accrued benefit under the Plan.

**WHEREFORE,** Plaintiff Dr. Friedman, as the participant in the Plan demands judgment against Defendants as follows: (a) declaring that Defendants violated its duties and obligations under the Plan by failing to pay Dr. Friedman's accrued benefit; (b) directing Defendants to pay the accrued benefit Dr. Friedman; (c) prejudgment interest; (d) attorney's fees pursuant to 29 U.S.C. § 1132(g)(1); (e) costs pursuant to 29 U.S.C. § 1132(g)(1); and (f) such other and further relief as the Court may deem equitable and just.

## SECOND COUNT
## (Breach of Fiduciary Duty Under 29 U.S.C. § 1132(a)(3)

46. Dr. Friedman repeats and re-alleges each and every allegation contained in Paragraphs 1 to 43 of the Complaint as if set forth at length herein.

47. Dandrea is a fiduciary as defined by 29 U.S.C. § 1109.

48. Dandrea violated his duties to follow the terms of the plan by failing to distribute Dr. Friedman's vested benefit as soon as administratively feasible following the termination of her employment.

49. Specifically, Dandrea is delaying the termination of the Plan, which would allow asset distribution, by refusing to fund his remaining obligation.

**WHEREFORE,** Plaintiff Dr. Friedman, as the participant in the Plan demands judgment against Dandrea as follows: (a) declaring that Dandrea violated his duties and obligations under the Plan by failing to pay Dr. Friedman's accrued benefit within an administratively feasible time; (b) directing Dandrea to fund the Plan so that the Plan can terminate and Dr. Friedman can collect her accrued benefit; (c) prejudgment interest; (d) attorney's fees pursuant to 29 U.S.C. § 1132(g)(1); (e) costs pursuant to 29 U.S.C. § 1132(g)(1); and (f) such other and further relief as the Court may deem equitable and just.

## THIRD COUNT
### (Breach of Fiduciary Duty Under 29 U.S.C. § 1104 and 1109)

50. Dr. Friedman repeats and re-alleges each and every allegation contained in Paragraphs 1 to 49 of the Complaint as if set forth at length herein.

51. 29 U.S.C. § 1104 imposes fiduciary duties of loyalty and prudence upon Defedants in connection with their administration of the Plan. The scope of these fiduciary duties and responsibilities includes managing the assets of the Plan for the

sole and exclusive benefit of Plan participants and beneficiaries, defraying reasonable expenses of administering the Plan, and acting with appropriate care, skill, diligence, and prudence.

52. Defendants breached these fiduciary duties by engaging in the conduct described herein. Among other things, Defendants imprudently caused a delay in adequately funding the Plan.

53. Further, each of the actions and omissions described herein demonstrate that Defendants failed to discharge their duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would have used in the conduct of an enterprise with like character and with like aims.

54. As a consequence of Defendants' fiduciary breaches, Dr. Friedman has suffered by not being able to access and manage her accrued benefit.

55. Dandrea is a fiduciary as defined by 29 U.S.C. § 1109.

56. Dandrea violated his duties to follow the terms of the plan by failing to distribute Dr. Friedman's vested benefit as soon as administratively feasible following the termination of her employment.

57. Specifically, Dandrea is delaying the termination of the Plan, which would allow asset distribution, by refusing to fund his remaining obligation.

**WHEREFORE,** Plaintiff Dr. Friedman, as the participant in the Plan

demands judgment against Dandrea as follows: (a) declaring that Dandrea violated his duties and obligations under the Plan by failing to pay Dr. Friedman's accrued benefit within an administratively feasible time; (b) directing Dandrea to fund the Plan so that the Plan can terminate and Dr. Friedman can collect her accrued benefit; (c) prejudgment interest; (d) attorney's fees pursuant to 29 U.S.C. § 1132(g)(1); (e) costs pursuant to 29 U.S.C. § 1132(g)(1); and (f) such other and further relief as the Court may deem equitable and just.

## FOURTH COUNT
### (Failure to Monitor Fiduciaries against Monmouth Pain and Friedman Chiropractic)

58. Dr. Friedman repeats and re-alleges each and every allegation contained in Paragraphs 1 to 57 of the Complaint as if set forth at length herein.

59. Monmouth Pain, as the Plan sponsor, and Friedman Chiropractic, as the Plan employer, are responsible for monitoring the fiduciaries of the Plan, namely Dandrea.

60. A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including reasonable administration of the Plan. These fiduciaries must take prompt and effective action to protect the plan and participants when the monitored fiduciaries are not meeting their fiduciary obligations.

61. Monmouth Pain and Friedman Chiropractic breached their fiduciary monitoring duties by failing to monitor Dandrea's obligations to fund the Plan once he established his intent to terminate it.

62. As a consequence of the foregoing breach of the duty to monitor, Dr. Friedman suffered losses because she was unable to control and manage her payable benefit.

63. Pursuant to 29 U.S.C. §§ 1109(a), 1132(a)(2), and 1133(a)(3), Monmouth Pain and Friedman Chiropractic are liable to restore to the Plan all loses suffered as a result of its failure to properly monitor the Plan's fiduciaries, and subsequent failure to take prompt and effective action to rectify any observed breaches.

## CERTIFICATION PURUSANT TO LOCAL CIVIL RULE 11.2 AND 40.1

The undersigned counsel hereby certifies that, to the best of her knowledge, the subject matter of this proceeding is the subject of one other pending court action, but is not the subject of any pending arbitration or administrative proceeding. Specifically, the relationship between Dr. Friedman, Friedman Chiropractic, and Dandrea is the subject of a New Jersey Superior Court, Law Division proceeding, docketed at MON-L-3674-19. The undersigned counsel further acknowledges that she is aware that if the foregoing is willfully false, he is subject to punishment.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 201.1

I hereby certify that the above-captioned matter is not subject to compulsory arbitration in that the Plaintiff seeks declaratory relief and benefits under the Plan exceeding $150,000.00, exclusive of interest and costs.

DATED: August 16, 2021     Respectfully submitted,

/s/ Nicole P. Allocca
John W. Leardi
Nicole P. Allocca
BUTTACI LEARDI & WERNER, LLC
212 Carnegie Center, Suite 202
Princeton, New Jersey 08540
609-799-5150
609-799-5180 FAX
*Attorneys for Plaintiff*